# EXHIBIT A

**EXHIBIT A**

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA

CASE NO. 8:20-cv-00771-CEH-JSS

PRIME TIME SPORTS GRILL, INC.,
d/b/a PRIME TIME SPORTS BAR,

    Plaintiff,

vs.

DTW1991 UNDERWRITING LIMITED, A
CERTAIN INTERESTED UNDERWRITER
AT LLOYD'S LONDON,

    Defendant.
_____/

## AMICUS BRIEF IN SUPPORT OF PLAINTIFF AND IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS [DE-13]

United Policyholders ("UP") by and through undersigned counsel, hereby files its *amicus* brief[1] in support of Plaintiff and in Opposition to Defendant's Motion to Dismiss [D.E.13].

## INTRODUCTION

Through this *amicus* brief, as supplementary to Plaintiff's opposition, UP seeks to address the limited issue that the certain covered causes of loss can in good faith be alleged to have caused "direct physical loss or damage."

This issue is at the forefront of COVID-19 related business interruption litigation in Florida and nationwide. While Plaintiff has set forth several reasons why Defendant's motion to dismiss should be denied, this Court's treatment of this issue has the potential to affect a multitude of other claims made by policyholders not only in Florida, but across the nation.

---

[1] Pursuant to Rule 29(a)(4), UP affirms that no party's counsel authored this brief, that no party or party's counsel contributed money to UP that was intended to fund preparing or submitting this brief, and no person contributed money that was intended to fund preparing or submitting the brief.

As set forth herein, Defendant's position has been widely rejected. Defendant chose not to define the phrase "direct physical loss or damage" in the policy issued to Plaintiff. Florida law is clear that structural alteration of covered property is not a necessary element of "direct physical loss or damage," especially where the insured property is otherwise rendered unusable or unusable for its intended purpose.

In addition, contamination itself, such as the presence of a noxious or disease causing agent in and around the insured property, can constitute "direct physical loss or damage," and business interruption coverage may be triggered where contamination of insured property – even if the contamination is merely presumed or imminent - causes a "necessary suspension" (either completely or in part) of the insured business's "operations."

## LEGAL ANALYSIS

I. **The inability to use a restaurant for its intended purpose constitutes "direct physical loss or damage."**

"Direct physical loss or damage" does not require structural alteration.

As the phrase "direct physical loss or damage" is undefined, each word is given its ordinary meaning. *See, e.g.*, *Homeowners Choice Prop. & Cas. v. Maspons*, 211 So. 3d 1067, 1069 (Fla. 3d DCA 2017) (citation omitted). Under a property insurance policy, the "diminution of value of something," including through the failure of something to "perform its function," can constitute a physical loss. *Id.* The use of the disjunctive "or" in the phrase "direct physical loss or damage" suggests that either a loss or damage is required, and that a loss is distinct from damage. *See Foremost Ins. Co. v. Medders*, 399 So. 2d 128, 130 (Fla. 5th DCA 1981).

As is the case in most property insurance policies, Defendant chose not to include the word "structural" and/or "visible" as a modifier to the terms "loss" and "damage." Defendant's argument that direct physical loss or damage requires *visible* alteration of an insured *structure*

has been rejected by Florida courts. *See Azalea, Ltd. v. American States Ins. Co.*, 656 So. 2d 600 (Fla. 1st DCA 1995).

*Azalea* involved the release of an unknown substance into a sewage treatment plant causing the plant to shut down, even though the structure of the plant was not visibly altered. *Id.* at 601. The City of Jacksonville subsequently closed the plant pending testing and remediation. *Id.* As a result of the unknown substance and the city's order, the plant could not be used for its intended purpose. *Id.*

The insurer denied coverage arguing "there was no direct physical loss to the" plant and that "the structure was not damaged." *Id.* The First DCA rejected the insurer's arguments as "not supported by either the facts or the law" because: (1) "[t]he facility could not operate or exist" subsequent to the dumping of the unknown substance; and (2) the substance "actually covered and adhered to the interior of the structure." *Id.* at 602.

In applying *Azalea*, Judge Moody observed "*Azalea* stands for the proposition that under Florida law "direct physical loss" includes more than losses that harm the structure of the covered property. It also stands for the proposition that repair costs may include more than costs to repair the structure of a building." *Three Palms Pointe, Inc. v. State Farm Fire & Cas. Co.*, 250 F. Supp. 2d 1357, 1364 (M.D. Fla. 2003).

A majority of courts similarly find structural damage is not required to show physical loss or damage, especially where the insured property cannot be used for or is unsafe for its intended purpose. *Travco Ins. Co. v. Ward*, No. 715 F. Supp. 2d 699, 708 (E.D. Va. 2010) (noting that the majority of cases nationwide find that physical damage to property is not necessary where, at least, the property has been rendered unusable by a covered cause of loss); *see also Sentinel Mgmt. Co. v. New Hampshire Ins. Co.*, 563 N.W.2d 296, 300 (Minn. Ct. App. 1997) ("Direct

physical loss also may exist in the absence of structural damage to the insured property." (citations omitted)). This is so because:

> To accept [the insurance company's] interpretation of its policy would be to conclude that a building which has been overturned or which has been placed in such position as to overhang a steep cliff has not been "damaged" so long as its paint remains intact and its walls adhere to one another. Despite the fact that a "dwelling building" might be rendered completely useless to its owners, [the insurer] would deny that any loss or damage had occurred unless some tangible injury to the physical structure itself could be detected. *Common sense requires that a policy should not be so interpreted in the absence of a provision specifically limiting coverage in this manner.*

*Hughes v. Potomac Ins. Co.*, 18 Cal. Rptr. 650, 655 (Cal. Dist. Ct. App. 1962) (emphasis added).

    a. <u>A property's unsuitability for an intended purpose constitutes "physical loss or damage."</u>

"In determining damage covered by insurance, [a] court must consider the nature and intended use of property, and the purpose of the insurance contract." *Prudential Prop. & Cas. Ins. Co. v. Lillard-Roberts*, No. CV-01-1362-ST, 2002 WL 31495830, at *28 (D. Or. June 18, 2002). A dine-in restaurant's intended purposes include providing a safe environment for its occupants, and the use and enjoyment of that property by its customers without being placed in a dangerous situation.

The inability to use the property or a portion of the property for its intended use constitutes a direct physical loss. *See, e.g.*, *Matzner v. Seaco Ins. Co.*, No. 96-0498-B, 1998 WL 566658 (Mass. Super. Aug. 26, 1998) (holding the loss of use of apartment building, rendered uninhabitable by carbon monoxide, constituted a direct physical loss); *Western Fire Ins. Co. v. First Presbyterian Church*, 437 P.2d 52 (Colo. 1968) (holding the loss of use of church, rendered uninhabitable by gasoline vapors, constituted a direct physical loss).

Defendant's reliance on *Mama Jo's, Inc. v. Sparta Insurance Co.*, No. 17-CV-23362-KMM, 2018 WL 3412974 (S.D. Fla. June 11, 2018), is misplaced. *Mama Jo's* is distinguishable

because: (1) the alleged cause of loss was ordinary construction dust; and (2) the insured restaurant continued operating as normal and was not rendered "uninhabitable or unusable . . . the restaurant remained open every day, customers were always able to access the restaurant, and there is no evidence that dust had an impact on the operation other than requiring daily cleaning." *Id.* at *25.

COVID-19 is inherently noxious and its presence, presumed presence, or imminently threatened presence renders the restaurant unusable or unsafe for its intended purpose. *See, e.g., Lillard-Roberts*, No. CV-01-1362-ST, 2002 WL 31495830, at *29 ("Although the mere adherence of molecules to porous surfaces, without more, is not physical loss or damage, this case involves more, namely the inability . . . to enjoy the personal property because of the mold spores adhering to it."); *Cooper & Olive Indus. v. Travelers Indem. Co.*, No. C-01-2400, 2002 WL 32775680, at *5 (N.D. Cal. Nov. 4, 2002) (policyholder could claim business income and losses from contamination of well with *E. coli* bacteria); *Pillsbury Co. v. Underwriters at Lloyd's*, 705 F. Supp. 1396, 1401 (D. Minn. 1989) (creamed corn products suffered physical loss or damage where product was under-processed, causing contamination and its eventual destruction).

Better reasoned decisions find "physical loss or damage" where the loss is temporary, or the reduction in utility is partial. In *Gregory Packaging, Inc. v. Travelers Property Casualty Co.*, No. 2:12-cv-04418, 2014 WL 6675934 (D. N.J. Nov. 25, 2014), the insurance company argued a manufacturing plant that was evacuated following the release of ammonia had not suffered physical loss or damage because the ammonia was remediated over the course of a week. The court rejected this rationale, holding "the property [could] sustain physical loss or damage without experiencing structural alteration," and there was physical loss or damage to the plant

from ammonia because "the heightened ammonia levels rendered the facility unfit for occupancy until the ammonia could be dissipated." *Id.* at \*16-\*17. Similarly, "even where *some utility remains*" in a business operation, a physical condition that renders a property unusable for its intended use constitutes physical loss or damage. *Cook v. Allstate Ins. Co.*, No. 48D02-0611-PL-01156, at \*9-\*10 (Ind. Super. Nov. 30, 2007).

## II. Both contamination and suspected contamination can cause "physical loss or damage."

### a. The novel coronavirus is a noxious and disease-causing agent that can remain aerosolized and is able to attach to surfaces for prolonged periods of time.

Suspected contamination of property by the novel coronavirus is enough to damage insured property. As was recently noted by the Pennsylvania Supreme Court,

> The enforcement of social distancing to suppress transmission of the disease is currently the only mitigation tool . . . COVID-19 does not spread because the virus is 'at' a particular location. Instead it spreads because of person-to-person contact . . . [and] [t]he virus can live on surfaces for up to four days and can remain in the air within confined areas and structures.

*Friends of DeVito v. Wolf,* No. 68 MM 2020, at \*38-\*39 (Pa. April 13, 2020). Numerous civil authority orders have found that COVID-19 is causing physical damage to properties due to its ability to attach to surfaces for prolonged periods of time. *See, e.g.*, Pinellas Cty. Resolution 20-20;[2] Broward Cty. Emergency Orders 20-01 & 20-03;[3] Walton Cty. Resolution 2020-30.[4]

There is no commercial method to test for the presence of COVID-19 on property, many afflicted with COVID-19 are asymptomatic yet able to transmit the virus, and as hundreds use restaurants daily, it is statistically certain that the virus was and continues to be present in high-trafficked restaurants. Physical loss or damage is therefore presumed.

---

[2] *See* https://www.pinellascounty.org/emergency/declarations.htm.
[3] *See* https://www.broward.org/CoronaVirus/Pages/generalDeclarations.aspx.
[4] *See* https://www.co.walton.fl.us/471/Resolutions-Ordinances.

The risk of transmission and property damage is heightened in restaurants, where air is recirculated, space is limited, and tables turnover frequently.  A recent study published by the U.S. Centers for Disease Control illustrates this point—describing how one asymptomatic patron, at an air-conditioned restaurant in Guangzhou, China, infected nine other diners from three different tables.  *See* https://wwwnc.cdc.gov/eid/article/26/7/20-0764_article.

      b. <u>Physical contamination of the insured property can cause physical loss and damage.</u>

The insurance industry knows viruses can cause physical loss or damage as evidenced by the creation of a virus exclusion endorsement following the SARS pandemic in the early 2000s.  *See* Insurance Services Office[5] ("ISO") form CP 01 40 07 06 "Exclusion of Loss Due to Virus or Bacteria."

While the presence of such an exclusion does not necessarily preclude coverage, the failure to include such an exclusion: (1) undermines an insurer's attempt to re-write an existing policy post-loss to deny claims involving viruses; and (2) confirms that viruses are covered causes of loss that can cause physical loss and damage under an all-risk policy.

And case law has long supported the proposition that contamination of a property, or the surrounding area, by a disease-causing or noxious agent causes physical loss or damage when it is present in/around the property and/or permeates the interior of insured property.  *See, e.g., Schlamm Stone & Dolan, LLP v. Seneca Ins. Co.*, 800 N.Y.S.2d 356 (N.Y. Sup. Ct. 2005) (noxious particles present in the insured property constituted property damage under the terms of the policy); *Azalea,* 656 So. 2d 600 (physical loss and damage where unknown substance adhered to surfaces of insured property); *Am. All. Ins. Co. v. Keleket X-Ray Corp.*, 248 F.2d 920,

---

[5] The Insurance Services Office is an insurance advisory organization that, among other things, provides pre-printed policy forms and endorsements widely used by insurers.

925 (6th Cir. 1957) (contamination of property with radioactive dust and radon gas were present in property thereby causing physical loss and damage). Thus, structural alteration does not have to be *visible* to be *physical*.

      c. <u>Presumed, suspected, or an imminent threat of contamination of the insured property can constitute physical loss or damage.</u>

Courts have also held there does not have to be actual contamination of property, so long as a physical cause imminently threatens a property's function or habitability. *See, e.g.*, *Port Auth. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 236 (3d Cir. 2002) (physical loss or damage results "if an actual release of asbestos fibers from asbestos-containing materials has resulted in contamination of the property such that its function is *nearly eliminated or destroyed, or the structure is made useless or uninhabitable, or if there exists an imminent threat of the release of a quantity of asbestos fibers that would cause such loss of utility*" (emphasis added)); *Hampton Foods, Inc. v. Aetna Cas. & Sur. Co.*, 787 F.2d 349, 352 (8th Cir. 1986) (policyholder could claim business income coverage where risk of collapse necessitated abandonment of grocery store).

## CONCLUSION

Contamination, suspected contamination, and/or the imminent threat of contamination of COVID-19 all constitute "physical loss and damage" under a property insurance policy. Structural alteration of the property is not required for "physical loss and damage" where the property can no longer serve or is unsafe for its intended purpose.

United Policyholders respectfully requests this Court consider these issues, ubiquitous in nearly every COVID-19 business interruption and civil authority case nationwide, in denying Defendant's motion to dismiss.

CASE NO. 8:20-cv-00771-CEH-JSS

Respectfully submitted,

*/s/ Matthew B. Weaver*
**R. Hugh Lumpkin**
Florida Bar No. 308196
hlumpkin@reedsmith.com
**Matthew B. Weaver**
Florida Bar No. 42858
mweaver@reedsmith.com
**Noah S. Goldberg**
Florida Bar No. 1008316
**REED SMITH LLP**
1001 Brickell Bay Drive, Suite 900
Miami, Florida 33131
Telephone: (786) 747-0200
Facsimile: (786) 747-0299

*Attorneys for United Policyholders*

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 18, 2020, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified below via transmission of Notice of Electronic Filing generated by CM/ECF.

*/s/ Matthew B. Weaver*
**Matthew B. Weaver**
Florida Bar No. 42858

CASE NO. 8:20-cv-00771-CEH-JSS

## SERVICE LIST

| | |
|---|---|
| **Mark D. Tinker, Esq., B.C.S.**<br>COLE, SCOTT & KISSANE, P.A.<br>4301 West Boy Scout Boulevard<br>Suite 400<br>Tampa, FL 33607<br>Tel.: (813) 509-2613<br>Fax: (813) 286-2900<br>mark.tinker@csklegal.com<br>mason.bradford@csklegal.com<br><br>*Counsel for Underwriters* | **Hannah E. Austin, Esq.**<br>**Michael V. Laurato, Esq.**<br>Austin & Laurato, P.A.<br>1902 West Cass Street<br>Tampa, FL 33606<br>Tel: (813) 258-0624<br>Fax: (813) 258-4625<br>efile@austinlaurato.com<br>haustin@austinlaurato.com<br>mlaurato@austinlaurato.com<br><br>*Counsel for Prime Time Sports Bar* |