# UNITED STATES DISTRICT COURT
## for the
## Middle District of Florida

| | |
|---|---|
| PRIME TIME SPORTS GRILL, INC. D/B/A PRIME TIME SPORTS BAR<br>*Plaintiff*<br><br>v.<br><br>DTW1991 UNDERWRITING LIMITED, A CERTAIN INTERESTED UNDERWRITER AT LLOYD'S LONDON<br>*Defendant* | Civil Action No. 8:20-cv-00771-CEH-JSS |

### DEFENDANT DTW1991 UNDERWRITING LIMITED'S REPLY TO THE RESPONSE TO THE MOTION TO DISMISS

Pursuant to Rule 3.01(c) and the Court's May 14, 2020 Order [Doc.20], DTW1991 Underwriting Limited replies to the Response to its Motion to Dismiss as follows:

**I.    Arguments regarding "all risk" coverage and its exclusions and limitations.**

Prime Time builds its response on a false premise: It presumes that no exclusions apply to the Governor's Orders. That is wrong, and the truth invalidates Prime Time's entire argument.

Prime Time: (1) assumes the policy does not exclude government orders, (2) asserts they are thus within the "all risk" coverage, then claims (3) the Business Income form cannot properly restrict that coverage. But its primary assumption is wrong. The policy *does* expressly exclude losses caused by the enforcement of, or compliance with, any ordinance or law regulating the use of property—and does so regardless of property damage—stating in relevant part:

**B.  Exclusions**
   1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

> **a. Ordinance Or Law**
> The enforcement of or compliance with any ordinance or law:
> **(1)** Regulating the construction, use or repair of any property; . . .
> This exclusion, Ordinance Or Law, applies whether the loss results from:
>> **(a)** An ordinance or law that is enforced even if the property has not been damaged; or
>> **(b)** The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property, or removal of its debris, following a physical loss to that property.

[Doc.6 at PageID 122]. It further excludes damage cause by "[d]elay, loss of use or loss of market," and states: "We will not pay for loss or damage caused by or resulting from. . . . Acts or decisions, including the failure to act or decide, of any . . . governmental body." *Id*. at 123, 125.

Prime Time claims loss of use and loss of market caused by the enforcement of, or its compliance with, two laws regulating the use of its property—which themselves are acts or decisions of a governmental body. That has never been a covered cause of loss. It is excluded by the policy because, once again, this is *property insurance* covering direct physical losses to Prime Time's property. The Business Income Coverage Form augments that coverage to allow for lost income during a suspension of operations, but only if the suspension results from covered property damage to the restaurant—a "direct physical loss of or damage to property at premises which are described in the Declarations." Prime Time has not experienced or claimed any such thing.

Prime Time's arguments also ignore the policy's Causes of Loss form. The form states that Covered Cause means "direct physical loss"—thereby echoing the same "direct physical" requirement as the Business Income form—then explains that a Covered Cause is a "direct physical loss unless the loss is excluded *or limited* in this policy." [Doc.6 at PageID 122]. The Business Income form is undeniably part of "this policy," and it plainly "limits" its extension of covered business income losses to those caused by direct physical loss to property. As much as Prime Time seeks to lobby its way around the plain policy language, that language controls.

Prime Time also asserts that Underwriters' position "is both unavailing and has been specifically rejected in Florida, citing *Mejia v. Citizens Prop. Ins. Corp.*, 161 So. 3d 576 (Fla. 2d DCA 2014) and *Citizens Property Insurance Corp. v. Munoz*, 158 So. 3d 671 (Fla. 2d DCA 2014). Neither case says anything close to what Prime Time represents, and they in fact do not even deal with the same subject matter. Both discuss one issue: The trial court's *allocation of the burden of proof* when an all risk policy requires the insurer to show a coverage limitation, followed by a coverage-extending endorsement requiring the insured to prove a covered cause of loss. *Mejia*, 161 So. 3d at 578; *Munoz*, 158 So. 3d at 674. That is all; the decisions recite burden of proof principles, and they are immaterial to anything before the Court on this Motion to Dismiss.

II.   **Arguments regarding business income qualifying as "property."**

Prime Time alternatively asserts that its business income is the "property" that has been damaged for the purposes of its claim for loss of business income. Aside from being illogically circular—Prime Time would have the damage be its own cause of damage—the argument once again ignores the policy. The policy defines Covered Property, and while the entire provision is too lengthy to reproduce here, it states: Covered property includes the building, business fixtures, and related equipment, but does *not* include accounts, bills, currency, money, notes or securities, among other similar items.[1] [Doc.6 at PageID 133–35]. Again, the *actual* policy language controls.

III.   **Summary of Prime Time's flawed logic.**

Prime Time does not even attempt to address the authorities interpreting direct physical loss requirements in business income policies—primarily *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Texpak Group N.V.*, 906 So. 2d 300 (Fla. 3d DCA 2005), *Mama Jo's, Inc. v. Sparta Ins. Co.*,

---

[1] Prime Time's contention also ignores the "direct physical loss of or damage to property at premises" aspect, as it could not possibly explain how income it never earned was at its premises, and then the actual money was directly and physically lost or damaged.

**3**

2018 WL 3412974 (S.D. Fla. June 11, 2018), and *Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co.*, 17 F. Supp. 3d 323 (S.D. N.Y. 2014)—and their universal rejection of its position. It instead attempts to distort the policy's language and, while doing so, repeatedly commingles the terms "Covered Cause of Loss" and "direct physical loss" as if they are interchangeable. They are not the same, and the policy is quite clear. In three simple sentences, the policy states:

> We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". ***The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations*** and for which a Business Income Limit Of Insurance is shown in the Declarations. ***The loss or damage must be caused by or result from a Covered Cause of Loss***. [Doc.6 at PageID 149].

It is the "suspension" of business that requires the "direct physical loss" of or damage to insured property, and it is the ensuing loss or damage that must result from a "Covered Cause of Loss."

Prime Time's "suspension" was allegedly caused by governmental orders, not physical loss of or damage to property at the insured premises. Likewise, Prime Time's loss or damage was not caused by a Covered Cause of Loss, because that is defined as a "direct physical loss," and it cannot be—as Prime Time suggests—a monetary one.

**IV.   Argument of impropriety for a motion to dismiss.**

Prime Time finally asserts that the Court should defer this issue to summary judgment, but there are no facts to develop. This is a pure question of law for the Court based upon the Amended Complaint's allegations and the attached policy. Further litigation would only concern damages and is unnecessary. *See Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1260 n.2 (11 Cir. 2006) (explaining a trial court's ability to consider and rule on the merits by way of a motion to dismiss).

                                            Mark D. Tinker, Esq., B.C.S.
                                            Florida Bar No.: 0585165
                                            *Trial Counsel for Underwriters*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically serve a copy on the following users registered with that system: **Hannah E. Austin, Esq.**, and **Michael V. Laurato, Esq.**, *Counsel for Prime Time Sports Bar*, Austin & Laurato, P.A., 1902 West Cass Street, Tampa, FL 33606, (813) 258-0624/(813) 258-4625(F), efile@austinlaurato.com, haustin@austinlaurato.com, and mlaurato@austinlaurato.com, on this May 21, 2020.

        Mark D. Tinker, Esq., B.C.S.
        Florida Bar No.: 0585165
        *Trial Counsel for Underwriters*