# EXHIBIT A

UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| PRIME TIME SPORTS GRILL, INC., d/b/a PRIME TIME SPORTS BAR<br><br>Plaintiff,<br><br>v.<br><br>DTW 1991 UNDERWRITING LIMITED, A CERTAIN INTERESTED UNDERWRITER AT LLOYD'S LONDON<br><br>Defendant. | Case No. 8:20-cv-00771-CEH-JSS |

**AMICUS CURIAE BRIEF ON BEHALF OF ROYAL STAYS MIAMI**

MLB 1440 Pennsylvania Avenue, LLC, LIDO 1440 Pennsylvania Avenue, LLC, MLB 1032 Michigan Avenue, LLC, and LIDO 1032 Michigan Avenue, LLC, all doing business as Royal Stays Miami (collectively, "Royal Stays"), respectfully submit this *amicus curiae* brief in relation to Defendant DTW 1991 Underwriting Limited, a Certain Interested Underwriter at Lloyd's London's Motion to Dismiss Pursuant to Rule 12(b)(6), (Doc. No. 13), and Plaintiff Prime Time Sport Grill, Inc.'s ("Prime Time") response thereto. (Doc. 18.)

### I.   BACKGROUND

**A.  The COVID-19 Pandemic**

As the Court is likely well aware, our nation is currently in the midst of a deadly pandemic spread by the SARS-CoV-2 virus, often referred to as the "coronavirus" or by one of the names of the disease that it causes, such as "COVID-19."[1]  COVID-19 has spread rapidly throughout the

---

[1] For ease of reference, the virus will be referred to as "COVID-19" herein.

United States and has resulted in over 1.3 million confirmed cases and over 80,000 deaths.[2] In response to the COVID-19 pandemic, states and cities throughout the country have issued orders requiring suspension of business at a wide range of establishments (the "Closure Orders"). Beginning with California in mid-March, 42 states issued statewide stay-at-home orders, practically preventing all but the most essential economic activity.[3]

### B. Business Interruption Protection Insurance

The Closure Orders have caused devastating business interruption losses to a wide variety of American businesses, including Royal Stays and Prime Time. Like Royal Stays and Prime Time, many of these affected businesses carry some form of business interruption insurance. However, many insurers, including Defendant, have been denying claims for business interruption losses caused by the COVID-19 pandemic because they claim that the policies only cover "direct physical loss or damage" and the COVID-19 pandemic does not qualify. For example, in addition to Defendant, The Hartford and Travelers have both declared their intent not to honor business interruption coverage on a nationwide basis.[4]

### C. The Current Action

Prime Time filed this action against Defendant on April 2, 2020, alleging that Defendant—like The Hartford, Travelers, and many other insurance companies—has refused to extend business interruption protection insurance in accordance with the insurance policy issued to Prime Time. Prime Time alleges the following:

---

[2] https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html

[3] https://www.nytimes.com/interactive/2020/us/coronavirus-stay-at-home-order.html

[4] *See* https://www.thehartford.com/coronavirus/businesses; *see also* https://www.travelers.com/about-travelers/covid-19-business-interruption

- Prime Time purchased a commercial property insurance policy from Defendant. (Doc. 1 ¶ 3.)

- The property policy provides coverage for all risks of physical damage or loss to covered property. *Id.*

- Prime Time suffered property damage and/or business interruption losses occasioned by COVID-19. *Id.* at ¶ 6

- Defendant owes coverage to the insured under the insurance agreement. *Id.* at ¶ 7

- Defendant has breached its obligation to provide coverage, or there is a dispute as to what that coverage obligation is. *Id.* at ¶¶ 9-11

- Prime Time is entitled to payment or to a declaration of coverage. *Id.* at ¶ 12

On May 4, 2020, Defendant filed a motion to dismiss Prime Time's Amended Complaint. (Doc. No. 13.) In its motion, Defendant makes two principal arguments for dismissal: (1) Prime Time has not alleged a "direct physical loss of or damage to property" at the insured premises, so it has failed to plead a claim within the policy's coverage; and (2) Prime Time's premises was not uninhabitable or unusable because Prime Time has not alleged the COVID-19 virus's physical presence inside its premises. (Doc. 13 at 7-21.) Prime Time filed its opposition to Defendant's motion to dismiss on May 11, 2020. (Doc. No. 18.) On May 13, 2020, Defendant filed an unopposed motion for leave to file a reply brief. (Doc. No. 19.) The Court has yet to rule on Defendant's motion to dismiss.

### D. Royal Stays' Interest In The Outcome Of This Litigation

Royal Stays comprises a group of Delaware limited liability companies registered to conduct business in the State of Florida. Like Prime Time, Royal Stays purchased a commercial property insurance policy issued by underwriters at Lloyd's London. Royal Stays' policy contains

terms and forms substantially similar, if not identical, to the terms and forms contained in Prime Time's commercial property insurance policy. For example, Royal Stays' policy contains the same Building and Personal Property Coverage form, the same Business Income form, and the same Commercial Property form. The language at the heart of the dispute in this case—"direct physical loss of or damage to Covered Property"—is also identical in both policies and is derived from the same Building and Personal Property Coverage form. Accordingly, Royal Stays has a substantial interest in the outcome of this litigation because the Court's ruling on Defendant's motion to dismiss will necessarily affect Royal Stays' rights under its commercial property insurance policy.

### E. JPML Proceedings

On April 20, 2020 and April 21, 2020, motions were filed with the Judicial Panel on Multidistrict Litigation ("JPML") requesting that the panel consolidate all federal suits arising out of the refusal to extend business interruption protection coverage due to the COVID-19 pandemic. *See In re COVID-19 Business Interruption Protection Ins. Litig.*, MDL No. 2942, Docs. 1, 4 (April 20, 2020). The motions identify, at the time of filing, at least sixteen cases, including this one, in thirteen different districts—with those numbers materially increasing every day. *See In re COVID-19 Business Interruption Protection Ins. Litig.*, MDL No. 2942, Doc. No. 4-1 at 10 (April 21, 2020). The motions also identify, at the time of filing, at least three other nearly identical federal cases, in addition to this one, filed against underwriters at Lloyd's London in the Southern District of Florida, the Southern District of New York, and the Southern District of Texas. *See In re COVID-19 Business Interruption Protection Ins. Litig.*, MDL No. 2942, Doc. No. 4-2 (April 21, 2020).

The motions request consolidation because all of the COVID-19 business interruption actions involve common questions of law and fact that arise from the wrongful denial of coverage. Each of the sixteen complaints, including Prime Time's Complaint, alleges:

- The insured purchased a property policy or a similar insurance policy from the defendant insurance company.
- The property policy provides coverage for all risks of physical damage or loss to covered property.
- The insured suffered property damage and/or business interruption losses occasioned by COVID-19.
- The insurer owes coverage to the insured under one or more of the insuring agreements typically found in the standard-form property insurance policies issued in the United States, such as:
    - The business interruption insuring agreement
    - The civil authority insuring agreement
    - The Extra Expense insuring agreement
    - The Sue and Labor insuring agreement
    - The ingress and egress insuring agreement
    - The preservation of property insuring agreement.
- The insurer has breached its obligation to provide coverage, or there is a dispute as to what that coverage obligation is.
- The policyholder is entitled to payment or to a declaration of coverage.

The proponents of consolidation assert that the near identity of claims and the standardized policy language used in the insurance industry means that any court tasked with resolving one of

these lawsuits, including this lawsuit, will face the same basic legal and factual issues. These common question of law and fact are the same principal issues set forth in Defendant's motion to dismiss in this case: "(1) whether COVID-19 causes "physical damage or loss to property" as that phrase is used in property insurance policies; and (2) whether COVID-19 was present on the insured property or on property sufficiently connected by proximity or in other ways to the insured property such that coverage is triggered." *See In re COVID-19 Business Interruption Protection Ins. Litig.*, MDL No. 2942, Doc. No. 4-1 at 6 (April 21, 2020).

In addition, the motions to consolidate identify many other common issues that are present in each of these cases. For example, any court presiding over one of the COVID-19 insurance cases would likely be asked to decide:

- Whether the phrase "all risks of physical damage or loss of property" includes the risk of disease and virus;

- Whether the insurance industry understood at the time it was selling insurance policies that virus and disease could cause physical damage or loss to property;

- Whether a safer-at-home or self-quarantine order based on the presence of COVID-19 in surrounding property is sufficient to trigger the civil authority coverage in property insurance policies;

- At what point the period of restoration (which determines the amount of business interruption loss) begins and ends in connection with a safer-at-home or self-quarantine order by a civil authority;

- Whether the expenses incurred by closing a business or reducing services in response to a safer-at-home or self-quarantine order by a civil authority constitute "extra expenses" covered by a property policy;

- Whether the expenses incurred by closing a business or reducing services in response to a safer-at-home or self-quarantine order by a civil authority constitute "sue and labor" expenses covered by a property policy; and

- Whether the expenses incurred by closing a business or reducing services in response to a safer-at-home or self-quarantine order by a civil authority constitute "preservation of property expenses" covered by a property policy.

*Id.* at 7-8.

The motions contend that determination of these and other common issues in a single district "will promote uniform resolution of these key questions, reduce costs for parties and witnesses, promote the efficient prosecution and resolution of all of the cases, and, consequently, provide speedier and more consistent decisions that society as a whole may use to structure the economy and the insurance market." *Id.* at 8-9. They also contend that consolidation "will permit more efficient coordination of discovery" as well as more consistent answers to the basic questions posed in all cases. *Id.* at 7.

On May 1, 2020, a Motion for Expedited Consideration of the Motions to Transfer was filed, asserting that any delay will result in "piecemeal litigation of dozens of similar cases across the country, with the attendant inefficiencies, uncertainty, and potential for conflicting actions for the next several months." *In re COVID-19 Business Interruption Protection Ins. Litig.*, MDL No. 2942, Doc. No. 22-1 at 2 (May 1, 2020). On May 4, 2020, the panel denied the motion to expedite and stated that it would consider all motions "in due course." *In re COVID-19 Business Interruption Protection Ins. Litig.*, MDL No. 2942, Doc. No. 51 (May 4, 2020). On May 5, 2020, separate counsel for underwriters at Lloyd's London filed his notice of appearance before the JPML. *In re COVID-19 Business Interruption Protection Ins. Litig.*, MDL No. 2942, Doc. No. 80

(May 5, 2020).  That same day, several of the defendant insurance companies filed motions for extension of time to file responses to the transfer motions.  *In re COVID-19 Business Interruption Protection Ins. Litig.*, MDL No. 2942, Doc. Nos. 113, 123, 127 (May 5, 2020).  On May 6, 2020, the panel granted the motions for extension as to all parties.  *In re COVID-19 Business Interruption Protection Ins. Litig.*, MDL No. 2942, Doc. No. 156 (May 6, 2020).  Consolidated responses to the motions for centralization are currently due on or before June 5, 2020 and reply briefs are due on or before June 15, 2020. *Id.*

## II.    ARGUMENT

This matter should be stayed in its entirety and the Court should postpone ruling on Defendant's pending motion to dismiss until the JPML reaches a decision on the pending motions to transfer.  District courts have inherent power to control the disposition of cases on their dockets to ensure a "fair and efficient" adjudication of matters.  *Republic of Venezuela ex rel. Garrido v. Philip Morris Cos., Inc.*, No. 99-0586-CIV, 1999 WL 33911677, at * 1 (S.D. Fla. Apr. 28, 1999).  The Court has broad discretion to stay proceedings as incidental to the power to control its own docket.[5]  *Stanton v. Wells Fargo & Co.*, No. 8:16-CV-3318-T-36JSS, 2017 WL 3701143, at *1 (M.D. Fla. Jan. 23, 2017).  "Courts routinely stay an action pending a transfer decision by an MDL panel, 'particularly when the transferor court believes that a transfer order is likely and when the pending motions raise issues likely to be raised in other cases as well.'" *Id.* (quoting *Bonenfant v. R.J. Reynolds Tobacco Co.*, No. 07-60301-CIV, 2007 WL 2409980, at *1 (S.D. Fla. 2007)).

---

[5]  Although neither party has moved the Court for a stay, it is well-established that a district court has the authority to stay proceedings on its own motion or on motion of the parties. *See, e.g.*, *Landis v. North Am. Water Works and Elec. Co.,* 299 U.S. 248, 254 (1936) (noting that federal courts have inherent authority to stay proceedings to conserve judicial resources and ensure that each matter is handled efficiently); *Ortega Trujillo v. Conover & Co. Commc'ns, Inc.,* 221 F.3d 1262, 1264 (11th Cir. 2000) (evaluating district court's *sua sponte* stay of proceedings pending resolution of a related foreign matter for abuse of discretion); *Government of the Virgin Islands v. Neadle,* 861 F. Supp. 1054, 1055 (M.D. Fla. 1994) ("[A] district court has discretion to stay an action which duplicates one pending in another federal district court.").

In *Stanton v. Wells Fargo & Co.*, this Court similarly stayed proceedings pending the JPML's transfer decision. *Id.* In *Stanton*, like here, this Court determined that a temporary stay pending resolution of the petition before the JPML would promote judicial economy, efficiency, and the goal of avoiding the risk of inconsistent rulings among courts:

> Here, this is one of numerous cases throughout the country involving the same allegations against Defendants. Doc. 30 at 3. The plaintiffs in a related case petitioned the MDL Panel to consolidate numerous cases, including this one, before the Judicial Panel on Multidistrict Litigation ("JPML"). *Id.* (citing *In Re Wells Fargo Fraudulent Account Opening Litig.*, MDL No. 2766, Doc. 1). The JMPL has accepted the petition, designated it as MDL No. 2766, and set a schedule under which responses to the petition are due no later than January 19, 2017. *Id.* Accordingly, Plaintiff moves this Court for a temporary stay pending resolution of the petition before the JPML. Doc. 32 at 3. She argues that the stay will serve economy, efficiency, and the goal of avoiding the risk of inconsistent rulings among courts. *Id.*
>
> The Court agrees that stay of these proceedings pending a decision from the JPML will preserve resources and judicial economy, and avoid inconsistent rulings. Therefore, the Court will stay this action pending the JPML's decision.

*Id.* at *1 (Honeywell, J.). Other courts within the Eleventh Circuit have also routinely issued temporary stays pending a transfer decision by the JPML. *See, e.g.*, *Republic of Venezuela ex rel. Garrido*, 1999 WL 33911677; *Fontanilles v. Merck & Co.*, No. 04-22799-CIV, 2004 WL 5569871, at *1 (S.D. Fla. Dec. 15, 2004); *Bonenfant*, 2007 WL 2409980, at *1; *Fowler v. Hamilton Med. Ctr., Inc.*, No. 4:08-CV-0055-HLM, 2008 WL 11336192, at *2 (N.D. Ga. May 7, 2008); *Wood v. Merck & Co.*, No. 2:08CV763-FTM-UADNF, 2008 WL 4642615, at *1–2 (M.D. Fla. Oct. 20, 2008); *Milrot v. Apple Inc.*, No. 10-61130-CIV, 2010 WL 3419699, at *1–2 (S.D. Fla. Aug. 27, 2010); *Kline v. Earl Stewart Holdings*, LLC, No. 10-80912, 2010 WL 3432824, at *1–2 (S.D. Fla. Aug. 30, 2010); *Giles v. POM Wonderful LLC*, No. 10-61684-CIV, 2010 WL 4630325, at *1 (S.D. Fla. Nov. 8, 2010); *Pulley v. JPMorgan Chase Bank, N.A.*, No. 12-60936-CIV, 2012 WL 2838677, at *1 (S.D. Fla. July 10, 2012); *Hammers v. Bayside Orthopaedics, Inc.*, No. 8:12-CV-2553-T-35-

MA, 2012 WL 7861448, at *1 (M.D. Fla. Dec. 4, 2012); *Gray v. Target Corp.*, No. 13-62769-CIV, 2014 WL 12600138, at *1–2 (S.D. Fla. Jan. 27, 2014); *Ashley v. Lumber Liquidators, Inc.*, No. CV 15-14081-CIV, 2015 WL 12671388, at *1 (S.D. Fla. Apr. 29, 2015).

Here, like in *Stanton*, this case is currently one of approximately 63 related cases that have provided notice to the JPML—with more cases being filed every day. Plaintiffs in the related cases have already petitioned the MDL panel to consolidate the cases, including this one, before the JPML. The JPML has accepted the petition, designated it as MDL No. 2942, and set a briefing schedule under which responses to the petition are due no later than June 5, 2020 and reply briefs are due no later than June 15, 2020. A short stay until after the JPML's decision will not prejudice either party in this matter. However, if the Court does not temporarily stay this matter, Royal Stays will potentially suffer significant prejudice because, as set forth above, the Court's decision on Defendant's motion to dismiss will necessarily affect the rights of Royal Stays under its policy. Accordingly, this Court should temporarily stay this case pending the resolution of the petition before the JPML because it will "preserve resources and judicial economy, and avoid inconsistent rulings." *Stanton*, 2017 WL 3701143, at *1.

### III.    CONCLUSION

This Court should postpone ruling on Defendant's Motion to Dismiss Pursuant to Rule 12(b)(6) and temporarily stay this case pending the resolution of the transfer petition before the JPML. A stay of these proceedings pending a decision from the JPML will preserve resources and judicial economy, and avoid inconsistent rulings and piecemeal litigation.

DATED: May 22, 2020						Respectfully submitted,

							*/s/ Derek E. León*
							Derek E. León
							  Florida Bar No. 625507
							*S*cott B. Cosgrove
							  Florida Bar No. 161365
							Jeremy L. Kahn
							  Florida Bar No. 105277
							LEÓN COSGROVE, LLP
							255 Alhambra Circle, Suite 800
							Coral Gables, Florida 33134
							Telephone:  305.740.1975
							Facsimile:  305.437.8158
							Email:  dleon@leoncosgrove.com
							Email:  scosgrove@leoncosgrove.com
							Email:  jkahn@leoncosgrove.com
							*Counsel for Royal Stays Miami*

## CERTIFICATE OF SERVICE

I certify that on May 22, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which in turn will serve a copy by notice of electronic filing to all counsel of record.

/s/ *Derek E. León*
Derek E. León