# EXHIBIT A
# Proposed Amicus Brief

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA**

| | |
|---|---|
| PRIME TIME SPORTS GRILL, INC., ) <br> d/b/a PRIME TIME SPORTS BAR, ) <br> ) <br> *Plaintiff* ) <br> ) <br> vs. ) <br> ) <br> DTW1991 UNDERWRITING LIMITED, ) <br> A CERTAIN INTERESTED UNDERWRITER ) <br> AT LLOYD'S LONDON, ) <br> ) <br> *Defendants.* ) <br> ) | CASE NO: 8:20-cv-00771-CEH-JSS |

**FLORIDA RESTAURANT AND LODGING ASSOCIATION'S *AMICUS CURIAE*
BRIEF IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION TO DISMISS**

The Florida Restaurant and Lodging Association ("FRLA") respectfully submits this *Amicus Curiae* Brief in support of Plaintiff's Response [Doc. 18] to Defendant's Motion to Dismiss [Doc. 13].[1] As addressed in its Motion for Leave to file this Brief, FRLA, on behalf of its thousands of members, has a strong interest in the outcome of this Motion and offers its unique perspective to the Court regarding the issues raised by the pending Motion to Dismiss.

**INTRODUCTION**

Like numerous insurance policies issued in Florida and elsewhere, Plaintiff's policy is an "all risk" property policy that broadly covers loss resulting from any kind of "physical loss or damage" unless excluded. Here, there is no applicable exclusion, such as in other policies for loss from "virus." This presents the threshold question of whether Covid-19 can potentially

---

[1] FRLA affirms that no party's counsel authored this brief, that no party or party's counsel contributed money that was intended to fund preparing or submitting this brief, and no person contributed money that was intended to fund preparing or submitting the brief.

constitute "physical loss or damage" within the meaning of this widely-used coverage grant. This is precisely what Plaintiff has alleged, and which must be taken as true at this stage in the case: that the referenced Civil Orders due to Covid-19 forced a restaurant "closure" and the "governmental suspension of business had a devastating effect on Prime Time's business." Doc 1 at 2.

The Defendant Insurer, on the other hand, compares Covid-19 to mere construction dust, or otherwise dismisses it as something ephemeral in the air that has no physical impact on a "structure." But Covid-19 is neither ghostly nor intangible – it is real and it is ***physical*** – and tragically, ***ubiquitous and constantly shifting***. And here, the Plaintiff's restaurant interruption is indisputably a "physical loss" event. A patron cannot venture inside the restaurant because it is ***physically dangerous***, which is why the relevant Civil Orders were issued, effectively shutting down the restaurant. Defendant Insurer simply attempts to ignore the core fact of the case that must be taken as true at the pleading stage: as a direct result of Covid-19 (a physical thing) and the related Civil Orders, Plaintiff has lost the physical use of its restaurant, resulting in a significant loss of business income.

FRLA submits this Amicus brief on behalf of its thousands of small business and other members throughout Florida whose restaurants and hotels have been devastated by the physical Covid-19 event and resulting Civil Orders of closure.

### A.    Settled Principles of Insurance Policy Interpretation

This Court must first take guidance from a bedrock principle of insurance policy interpretation (which the other briefs do not mention). Florida law requires that *any policy ambiguity must be construed in favor of coverage*. Time and time again, Florida courts, including our Supreme Court, have re-affirmed this rule. *See, e.g., Washington National Ins.*

*Corp. v. Ruderman,* 117 So.3d 943 (Fla. 2013) (where the Florida Supreme Court answered a certified question from the U.S. Eleventh Circuit, affirming that any insurance policy ambiguity *must* automatically be construed in favor of coverage without resort to extrinsic evidence); *Travelers Indem. Co. v. PCR Inc.*, 889 So.2d 779 (Fla. 2004); *Mierzwa v. Florida Windstorm Underwriting Assoc.*, 877 So.2d 774 (Fla. 4th DCA 2004); *State Farm Mut. Auto Ins. Co. v. Parrish*, 873 So.2d 547 (Fla. 5th DCA 2004); *Auto-Owners Ins. Co. v. Anderson*, 756 So.2d 29 (Fla. 2000); *Westmoreland v. Lumbermans Mut. Cas. Co.*, 704 So.2d 176 (Fla. 4th DCA 1997); *Progressive Ins. Co. v. Wesley*, 702 So.2d 513 (Fla. 2d DCA 1997); *Premier Ins. Co. v. Adams*, 632 So.2d 1054 (Fla. 5th DCA 1994); *Green Lawn Systems, Inc. v. American Economy Ins. Co.*, 620 So. 2d 1290 (Fla. 2d DCA 1993); *Stuyvesant Ins. Co. v. Butler*, 314 So.2d 567 (Fla. 1975).

This principle means that if there are two reasonable interpretations of the same language, then the Court *must* favor the pro-coverage view. *Ruderman,* 117 So.3d at 948 ("policy language is considered to be ambiguous ... if the language 'is susceptible to more than one reasonable interpretation, one providing coverage and the other limiting coverage'") (citation omitted). As the Florida Supreme Court stressed: "this Court has held many times…that where the provisions of an insurance policy are at issue, any ambiguity which remains after reading each policy as a whole and endeavoring to give every provision its full meaning and operative effect must be liberally construed in favor of coverage and strictly against the insurer." *Id*. at 949-50 (citations omitted).

This Court and the Eleventh Circuit have since dutifully followed Florida law on this point and construed ambiguity, where it is found, in favor of coverage. *See, e.g., Canal Indem. Co. v. Margaritaville of NSB, Inc.*, 562 Fed. Appx. 959, 961 (11th Cir. 2014); *Essex Ins. Co. v. Kart Constr. Inc.*, 2015 WL 4730540 (M.D. Fla. 2015).

## B.     History of Courts Finding "Physical Loss" in Similar Circumstances

The Plaintiff's policy covers loss from a suspension of operations "caused by direct physical loss of or damage to property at premises which are described in the Declarations." [Doc.6-1 at PageID 149].  This, of course, is precisely what Plaintiff has alleged.

If this Court believes it is timely to rule on the core legal issue at the pleading stage, then the issue is not a close one.  There is a long-running debate in the case law as to what constitutes "physical *loss*" as distinct from "physical *damage*," with the policyholder logically demonstrating that the word "loss" cannot be collapsed into and mean the same thing as "damage."  While "damage" indisputably includes tangible or structural physical damage such as inflicted by a tornado, "loss" must mean something different from "damage."  Here, Covid-19's actual or suspected physical presence at or in the vicinity of a property like the Plaintiff's restaurant prevents the policyholder from making full use of the property, especially in cases where the business (as here) has had to close in part or in full.  This kind of loss constitutes a "*physical loss*" to the property because it cannot be used for its insured purpose.

Thus, courts have long made this distinction between "physical damage" and "physical loss" in contexts analogous to Covid-19.  For example, in *Motorist Mutual Insurance Co. v. Hardinger*, 131 Fed. Appx. 823 (3d Cir. 2005) (applying Pennsylvania law), the court found that bacterial contamination of a home's water supply constituted a "direct physical loss to property" because, despite the lack of physical damage, it rendered the home too dangerous to inhabit. And in *Cooper v. Travelers Indemnity Company of Illinois, No. C-01-2400-VRW, 2002 WL 32775680 (N.D. Cal. Nov. 4, 2002)*, where a tavern was forced to close due to e-coli contamination in its well water, the court held that the e-coli constituted "direct physical damage to the property" and ordered the insurer to pay time element/extra expense coverage.

Many other courts have likewise distinguished between "physical damage" and "physical loss" in a range of other analogous factual contexts. For example, in *Total Intermodal Services v. Travelers Property Casualty Company of America*, No. CV 17-04908, 2018 WL 3829767 (C.D. Cal. July 11, 2018), the court interpreted identical "direct physical loss of or damage to" language as encompassing "loss of use." In that case, some cargo was lost during shipment but was not physically damaged, and the court held this event constituted "physical loss of" insured property, stating that "'loss of' property contemplates that the property is misplaced and unrecoverable, without regard to whether it was damaged." And in *U.S. Airways v. Commonwealth Insurance Co.,* 64 Va. Cir. 408 (Va. Cir. Ct. 2004), an airline sought coverage for business interruption (BI) losses sustained as a result of the government's closure of National Airport during the 9/11 attacks. The insurer argued that actual damage to the airline's property was required to recover under the Civil Authority part of BI coverage. The court rejected this argument, ruling in favor of the policyholder and distinguishing the insurer's cases that involved policies with language requiring "physical damage."

Indeed, dozens of courts across the country, both state and federal (too many to cite here) have likewise found "physical loss" in fact patterns where there has not been tangible physical damage to the property. As one among many examples, in *Columbiaknit, Inc. v. Affiliated FM Insurance Co.*, No. Civ. 98-434-HU, 1999 WL 619100 (D. Or. Aug.4, 1999), the court found that mildew exposure qualified as direct "physical loss" sufficient to trigger BI coverage. Insurer-side articles have pointed out that the court added: "[t]he mere adherence of molecules to porous surfaces, without more, does not equate to physical loss or damage." This distinction, however, overlooks the glaring fact that in the Covid-19 context there is "more" – specifically,

the prospect of illness or death due to the presence of the virus on surfaces or in the restaurant's air.

There is also a long line of majority-rule cases that a property affected by an odor has experienced "physical loss" sufficient to trigger insurance even without physical alteration or damage to the property itself. As but two examples among many, i*n TRAVCO Insurance Co. v. Ward*, 715 F. Supp. 2d 699, 709 (E.D. Va.2010), *aff'd*, 504 F. App'x. 251 (4th Cir. 2013), the court found "direct physical loss" where a "home was rendered uninhabitable by the toxic gases" released by defective drywall, regardless of lasting physical damage to the property itself. *See also*, *Gregory Packaging, Inc. v. Travelers Property Casualty Co.*, No. 2:12-cv-04418, 2014 WL 6675934 (D.N.J. November 25, 2014) (holding that an ammonia discharge inflicted direct physical loss or damage to the manufacturing plant because the ammonia physically rendered the facility temporarily unfit for occupancy despite a lack of any structural alteration).

Defendant's primary reliance on *Mama Jo's, Inc. v. Sparta Insurance Co.*, No. 17-CV-23362-KMM, 2018 WL 3412974 (S.D. Fla. June 11, 2018) (the case with the construction dust) is aptly distinguished in the Amicus brief filed by United Policyholders (Doc 21-1 at 4).

### C. Conclusion

FLRA respectfully submits that it is premature for the Court to resolve the core legal issue presented by the Defendant's motion because, at the pleading stage, Plaintiff's allegations must be taken as true and construed in its favor. The issue presented is one of mixed fact and law. But if the Court elects to now address whether Covid-19 can cause a physical loss of insured property, it should follow the majority of courts around the country that have found coverage in similar circumstances or recognize the ambiguity that Florida law requires be construed in favor of the policyholder.

                Respectfully submitted,

                */s/ Jason S. Mazer*
                Jason S. Mazer, Esq.
                Florida Bar No. 0149871
                CIMO MAZER MARK PLLC
                100 Southeast Second Street Suite 3650
                Miami, Florida  33131
                Telephone: (305) 374-6481
                Fax: (305)  374-6488
                jmazer@cmmlawgroup.com

                *Attorneys for Florida Lodging & Restaurant Association*

Counsel Assisting on the Brief:

Gary S. Thompson (D.C. Bar #435315)
THOMPSON HAMMERMAN DAVIS LLP
1015 15th Street NW, Suite 600
Washington, DC 20005
Telephone: (202) 256-9910
Fax: (202) 318-5356
gthompson@thompsonhd.com

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that on May 31, 2020, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified below via transmission of Notice of Electronic Filing generated by CM/ECF.

                */s/ Jason S. Mazer*
                Jason S. Mazer, Esq.
                Florida Bar No. 0149871

- 8 –

## **SERVICE LIST**

| | |
|---|---|
| **Mark D. Tinker, Esq., B.C.S.** | **Hannah E. Austin, Esq.** |
| COLE, SCOTT & KISSANE, P.A. | **Michael V. Laurato, Esq.** |
| 4301 West Boy Scout Boulevard | Austin & Laurato, P.A. |
| Suite 400 | 1902 West Cass Street |
| Tampa, FL 33607 | Tampa, FL 33606 |
| Tel.: (813) 509-2613 | Tel: (813) 258-0624 |
| Fax: (813) 286-2900 | Fax: (813) 258-4625 |
| mark.tinker@csklegal.com | efile@austinlaurato.com |
| mason.bradford@csklegal.com | haustin@austinlaurato.com |
| | mlaurato@austinlaurato.com |
| | |
| *Trial Counsel for Underwriters* | *Counsel for Prime Time Sports Bar* |