# UNITED STATES DISTRICT COURT
### for the
### Middle District of Florida

| | | |
|---|---|---|
| PRIME TIME SPORTS GRILL, INC. D/B/A PRIME TIME SPORTS BAR | ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | |
| v. | ) | Civil Action No. 8:20-cv-00771-CEH-JSS |
| | ) | |
| DTW1991 UNDERWRITING LIMITED, A CERTAIN INTERESTED UNDERWRITER AT LLOYD'S LONDON | ) | |
| | ) | |
| *Defendant* | ) | |

## DEFENDANT DTW1991 UNDERWRITING LIMITED'S
## THIRD NOTICE OF SUPPLEMENTAL AUTHORITY

Defendant DTW1991 Underwriting Limited gives notice of the attached as supplemental authorities in this matter. The authorities are related to the issues raised in DTW1991's Motion to Dismiss [Doc.13]. Copies of the authorities are attached as Exhibit 1.

a. ***Infinity Exhibits, Inc. v. Certain Underwriters at Lloyd's London Known as Syndicate PEM 4000***, **8:20-CV-1605-T-30AEP, 2020 WL 5791583 (M.D. Fla. Sept. 28, 2020) (Moody, J.)** ("The Amended Complaint does not include any allegations that Plaintiff was precluded from accessing the Property as a result of COVID-19 or any of the related government orders and social distancing requirements. The Amended Complaint does not describe how the Property or any other property experienced 'direct physical loss or damage.' Underwriters moves to dismiss the entirety of the Amended Complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Underwriters' main argument is that the Policies do not cover the Claim because Plaintiff has not alleged direct physical loss or damage to the Property. The Court agrees.").

b. ***Nahmad v. Hartford Cas. Ins. Co.***, **1:20-CV-22833, 2020 WL 6392841 (S.D. Fla. Nov. 2, 2020) (Bloom, J.)** ("Federal courts in Florida that have examined whether economic losses caused by COVID-19 business closures or suspensions constitute a 'direct physical loss' or 'physical harm' have rejected Plaintiffs' arguments. . . . The coronavirus does not physically alter the appearance, shape, color, structure, or other material dimension of the property. Consequently, plaintiff has failed to plead a direct physical loss—a prerequisite for coverage.").

c. ***Harvest Moon Distributors, LLC v. S.-Owners Ins. Co.***, **620CV1026ORL40DCI, 2020 WL 6018918 (M.D. Fla. Oct. 9, 2020) (Byron, J.)** ("Although the Policy does not explicitly exclude pandemic-related losses, Plaintiff's loss arose from Disney's act of refusing the beer, not from the pandemic. COVID-19 itself did not damage Plaintiff's beer. . . . Rather, COVID-19 merely motivated Disney's decision to voluntarily close and to refuse acceptance of Plaintiff's beer. . . . The pandemic does not change the terms of the Policy, which the parties bargained for and agreed to.").

d. ***Water Sports Kauai, Inc. v. Fireman's Fund. Ins. Co., et. al.***, **20-CV-03750-WHO, 2020 WL 6562332 (N.D. Cal. Nov. 9, 2020)** ("As described below, I will follow the overwhelming majority of courts that have determined that the mere threat of coronavirus cannot cause a 'direct physical loss of or damage to' covered property as required under the Policy. That resolves the issue of coverage under the Business Income and Civil Authority provisions as a result of both the spread of coronavirus and the government closure orders.").

e. ***Real Hosp., LLC v. Travelers Cas. Ins. Co. of Am.***, **2:20-CV-00087-KS-MTP, 2020 WL 6503405 (S.D. Miss. Nov. 4, 2020)** ("Plaintiff is not the first policyholder to argue in court that executive/government orders issued during the COVID-19 pandemic that have affected their operations trigger insurance under Business Income/Extra Expense provisions identical to the one at issue in the Policy here. Most courts have rejected these claims and granted motions to dismiss based on the finding that the businesses' complete or partial closures due to government orders issued to slow the spread of COVID-19 do not constitute 'direct physical loss of or damage to property.'") (citing *Travelers Cas. Ins. Co. of Am. v. Geragos & Geragos*, No. CV 20-3619 PSG, 2020 WL 6156584 (C.D. Cal. Oct. 19, 2020) (J. Gutierrez); *Louis G. Orsatti, DDS, P.C. v. Allstate Ins. Co.*, No. 5:20-cv-00840, 2020 WL 5948269 (W.D. Tex. Oct. 7, 2020); *Henry's La. Grill, Inc. v. Allied Ins. Co. of Am.*, No. 1:20-cv-2939, 2020 WL 5938755 (N.D. Ga. Oct. 6, 2020); *Mark's Engine Co. No. 28 Restaurant, LLC v. The Travelers Indemnity Co. of Conn.*, No. 2:20-cv-4423, 2020 WL 5938689 (C.D. Cal. Oct. 2, 2020) (J. Birotte); *Pappy's Barber Shops, Inc. v. Farmers Grp., Inc.*, No. 20-CV-907-CAB-BLM, 2020 WL 5500221, at *1 (S.D. Cal. Sept. 11, 2020); *10E, LLC v. Travelers Indemnity Co. of Conn.*, No. 2:20-cv-4418, 2020 WL 5359653 (C.D. Cal. Sept. 2, 2020) (J. Wilson); and *Malaube, LLC v. Greenwich Ins. Co.*, No. 20-22615-CIV, 2020 WL 5051581 (S.D. Fla. Aug. 26, 2020)).

f. ***Uncork & Create LLC v. Cincinnati Ins. Co.***, **2:20-CV-00401, 2020 WL 6436948 (S.D.W. Va. Nov. 2, 2020)** ("The Court finds those decisions concluding that COVID-19 does not cause a direct physical damage or loss to property to be more persuasive. Although some courts have drawn a distinction based on whether a complaint alleged presence of the virus on the premises, the Court does not find such an allegation determinative. . . . [E]ven when present, COVID-19 does not threaten the inanimate structures covered by property insurance policies, and its presence on surfaces can be eliminated with disinfectant. Thus, even actual presence of the virus would not be sufficient to trigger coverage for physical damage or physical loss to the property.").

Cole, Scott & Kissane
Miami | Fort Lauderdale West | Fort Lauderdale East | West Palm Beach | Orlando | Jacksonville | Tampa
Bonita Springs | Naples | Pensacola | Fort Myers | Tallahassee | Key West

g. ***Hillcrest Optical, Inc. v. Cont'l Cas. Co***., **1:20-CV-275-JB-B, 2020 WL 6163142 (S.D. Ala. Oct. 21, 2020)** ("It is apparent from the above that a 'direct physical loss of property' contemplates the tangible alteration of property which would necessitate a party's absence to fix it or require the party to begin operations elsewhere. The 'period of restoration' expressly assumes repair, rebuild or replacement of property. Read in context with 'direct physical loss of property,' a 'period of restoration' can occur only by virtue of a repairable, rebuildable, or replaceable physical alteration of covered property. This begs the question: how can a statewide order which 'required' Plaintiff to shutdown necessitate some sort of repair?").

h. ***Travelers Cas. Ins. Co. of Am. v. Geragos & Geragos***, **CV 20-3619 PSG (EX), 2020 WL 6156584 (C.D. Cal. Oct. 19, 2020)** ("[L]osses from inability to use property do not amount to 'direct physical loss of or damage to property' within the ordinary and popular meaning of that phrase. Physical loss or damage occurs only when property undergoes a 'distinct, demonstrable, physical alteration.' 'Detrimental economic impact' does not suffice. Because there was no physical damage to G&G's property, the Business Income and Extra Expenses coverage does not apply. Accordingly, amendment would be futile, and the Court DENIES leave to amend.").

i. ***Henry's Louisiana Grill, Inc. v. Allied Ins. Co. of Am***., **1:20-CV-2939-TWT, 2020 WL 5938755 (N.D. Ga. Oct. 6, 2020)** ("[N]o physical change as a result of the virus' presence can be argued here. Instead, the Plaintiffs cast the Governor's Executive Order as imposing some physical change on the covered premises. Under the Plaintiffs' logic, a minute before the Governor issued the Order, the dining rooms existed in one state. A minute later, the Governor issued the Order, and the restaurant underwent a direct physical change that left the dining rooms in a different state. This interpretation of the contractual language exceeds any reasonable bounds of possible construction, pushing the words individually and collectively beyond what any plain meaning can support. . . . Thus, the contract language issue here is not ambiguous, and because the Governor's Executive Order did not create a 'direct physical loss of' the Plaintiffs' dining rooms, the Business Income provision does not apply to the Plaintiffs' claims.").

j. ***Oral Surgeons, P.C. v. Cincinnati Ins. Co***., **4-20-CV-222-CRW-SBJ, 2020 WL 5820552 (S.D. Iowa Sept. 29, 2020)** ("Recent Cases cited by Cincinnati have held that virus-related closures of business do not amount to direct loss to property covered by the Cincinnati policy of insurance. The few contrary cases cited by OSPC are distinguishable on their facts and not as well analyzed as the many authorities cited by Cincinnati.").

Mark D. Tinker, Esq., B.C.S.
Florida Bar No.: 0585165
*Trial Counsel for Underwriters*

3

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically serve a copy on the following users registered with that system: **Hannah E. Austin, Esq.**, and **Michael V. Laurato, Esq.**, *Counsel for Prime Time Sports Bar*, Austin & Laurato, P.A., 1902 West Cass Street, Tampa, FL 33606, (813) 258-0624/(813) 258-4625(F), efile@austinlaurato.com, haustin@austinlaurato.com, and mlaurato@austinlaurato.com, on this November 15, 2020.

> **COLE, SCOTT & KISSANE, P.A.**
> 4301 West Boy Scout Boulevard
> Suite 400
> Tampa, FL 33607
> Tel.: (813) 509-2613
> Fax: (813) 286-2900
> Primary e-mail: mark.tinker@csklegal.com
> Secondary: mason.bradford@csklegal.com
> *Trial counsel for Underwriters*
>
> By:
> Mark D. Tinker, Esq., B.C.S.
> Florida Bar No.: 0585165

4