UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PRIME TIME SPORTS GRILL,
INC.,

      Plaintiff,

v.                                                      Case No: 8:20-cv-771-T-36JSS

DTW 1991 UNDERWRITING
LIMITED,

      Defendant.
_____/

## **ORDER**

This matter comes before the Court upon Defendant's Motion to Dismiss Pursuant to Rule 12(b)(6) [Doc. 13], Plaintiff's response [Doc. 18], Defendant's reply [Doc 22] and the notices of supplemental authority filed by the parties [Docs. 39, 40, 41, 42, 43, 44, 47]. In the motion, Defendant argues that Plaintiff has failed to state a claim upon which relief can be granted as Plaintiff has not alleged any facts that give rise to coverage under its policy of commercial property insurance. The Court, having considered the motion and being fully advised in the premises, will **GRANT** Defendant's Motion to Dismiss Pursuant to Rule 12(b)(6).

## I.    **BACKGROUND**[1]

---

[1] The following statement of facts is derived from Plaintiff's Complaint (Doc. 1), the allegations of which the Court must accept as true in ruling on the instant Motion to Dismiss. *Linder v. Portocarrero,* 963 F.2d 332, 334 (11th Cir. 1992); *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp. S.A.,* 711 F.2d 989, 994 (11th Cir. 1983).

### a. Facts

Plaintiff Prime Time Sports Grill, Inc. operates a bar and restaurant in Tampa, Florida. [Doc. 6 ¶ 4]. In conducting business, Plaintiff ordinarily employs between 20 to 25 employees, 7 days a week, 365 days per year, from 11 a.m. until 3 a.m. daily. *Id.* Effective June 7, 2019, Plaintiff received commercial property insurance coverage from Defendant DTW 1991 Underwriting Limited through the international insurance marketplace known as Lloyd's, London. *Id.* ¶ 3. The policy protected Plaintiff from all risks that were not specifically excluded, including loss of net business profit and operating expenses. *Id.* Per the policy, this coverage extended through June 7, 2020. *Id.*

On March 17, 2020, Florida's Governor Ron DeSantis ordered all bars and restaurants in the state of Florida closed for 30 days in response to the COVID-19 pandemic. *Id.* ¶ 6. [2] That same day, Plaintiff notified Defendant that based on its monthly gross revenues and normal operating expenses, the governmental suspension would result in a loss of more than $15,000 in net profit and would cause it to incur more than $60,000.00 in operating expenses, including payroll from March 17, 2020 through April 1, 2020 and that the loss would be in excess of $30,000 in net profit and $120,000 in operating expenses, including payroll by April 17, 2020. *Id.* ¶¶ 6,7. Plaintiff also requested that Defendant pay all benefits owed under the policy for the COVID-

---

[2] On April 1, 2020, Governor DeSantis implemented a state-wide "stay at home" order for the entire state of Florida for an additional 30 days. [Doc. 6 ¶ 3].

19 governmental suspension of business. *Id.* ¶ 7. By letter dated March 23, 2020, Defendant denied the request. *Id.* ¶ 8.

### b. *Procedural history*

Plaintiff then filed this action on April 2, 2020.[3] [Doc. 1]. In the Amended Complaint, Plaintiff alleges it is in doubt as to its rights and Defendant's obligations to provide coverage for "the losses stemming from the governmental suspension as a result of the COVID-19 pandemic relating from the losses of income, business interruption, extra expense, contingent business interruption, ingress/egress, civil authority, all risk coverage, and other coverage extensions under the policy of insurance." [Doc. 6 ¶¶ 11, 12]. As such, Plaintiff has requested a declaration that the losses resulting from Covid-19 are covered by the policy issued by Defendant.

Defendant has moved to dismiss the action pursuant to Federal Rule of Civil Procedure 12(b)(6). [Doc. 13 at p. 2]. In the motion, Defendant argues that the Amended Complaint does not allege a claim that falls within the policy's Business Income insuring agreement as coverage only applies to a slowdown or cessation of operations if it is "caused by *direct physical loss of or damage to property*" at the insured premises and Plaintiff has not alleged any form of "physical" loss or damage to anything. *Id.* at pp. 7-8. Additionally, Defendant states that any claim for coverage under the Civil Authority provision of the policy fails as a matter of law as that provision requires, among other things, damage to property away from the insured

---

[3] Initially, Plaintiff named defendant as Certain Underwriters at Lloyd's London but then amended the complaint in response to this Court's jurisdictional inquiry. [Docs. 1, 5].

premises, which also has not been alleged. *Id.* at pp. 20-21. Defendant further argues that the Court should dismiss the action with prejudice as Plaintiff cannot formulate any alternative basis for coverage out of the Governor's orders or COVID-19 in general as neither has created a direct physical loss to the property. *Id.* at p. 12.

In its response, Plaintiff presents a number of arguments as to why Defendant's coverage decision is wrong and the motion should be denied. [Doc. 18 at pp. 12-24]. Plaintiff contends that it has sufficiently alleged that a "covered cause of loss" caused "direct physical loss of or damage to" insured "property." *Id.* at pp. 2, 12. Plaintiff specifically explains that the policy offers "all-risk" coverage and all fortuitous loss occurring during the policy period is covered unless it results from misconduct or fraud and there is no specific exclusion in the policy for losses caused by governmental suspension orders or viruses. *Id.* at pp. 12-15. Additionally, Plaintiff contends that business income is covered commercial property that suffered a loss or damage when business operations were suspended, and that Defendant conflates coverage with causation and indiscriminately shifts between cause of loss and the loss suffered. *Id.* at p. 16. Plaintiff further contends that the failure of the property to perform its function constituted a "direct" and "physical" loss to the property within the meaning of the policy, even in the absence of "damage." *Id.* at pp. 18-19.

In reply, Defendant again argues that Plaintiff has not experienced or claimed any "direct physical loss of or damage to property at premises which are described in the Declarations," which must exist for coverage to exist under the policy. [Doc. 22 at p. 2]. Defendant also argues that loss of use and loss of market caused by the

4

enforcement of, or compliance with laws regulating the use of property has never been a covered cause of loss. *Id.* In fact, Defendant posits that Plaintiff's claim that coverage exists is based on an attempt to avoid the plain language of the policy, which controls. *Id.* Defendant also argues that business income does not constitute covered property under the policy, as the policy defines covered property as including the building, business fixtures, and related equipment, but *not* accounts, bills, currency, money, notes or securities, among other similar items. *Id.* at p. 3. Further, Defendant again points out that Plaintiff's suspension was allegedly caused by governmental orders, not physical loss of or damage to property at the insured premises and the monetary loss was not a covered cause of loss as defined in the policy. *Id.* at p. 4. Lastly, Defendant argues that because there are no facts to develop, the Court need not defer the issue to summary judgment as Plaintiff requests in its response. *Id.*

## II.   LEGAL STANDARD

When deciding whether to grant a motion to dismiss pursuant to Federal Rule of Civil Procedure12(b)(6), the court must accept "the complaint's allegations as true and constru[e] them in the light most favorable to the plaintiff." *Castillo v. Allegro Resort Mktg.*, 603 F. App'x 913, 915 (11th Cir. 2015) (quoting *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1335 (11th Cir. 2012)). "A court is generally limited to reviewing what is within the four corners of the complaint on a motion to dismiss." *Austin v. Modern Woodman of Am.*, 275 F. App'x 925, 926 (11th Cir. 2008) (quoting *Bickley v. Caremark RX, Inc.*, 461 F.3d 1325, 1329 n.7 (11th Cir.2006)). This includes attachments or

exhibits provided with the complaint. *See Gill as Next Friend of K.C.R. v. Judd*, 941 F.3d 504, 511 (11th Cir. 2019) ("The Civil Rules provide that an attachment to a complaint generally becomes 'part of the pleading for all purposes,' Fed. R. Civ. P. 10(c), including for ruling on a motion to dismiss."); *Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016) (noting that attached exhibits to a complaint can be considered on a motion to dismiss). "[W]hen exhibits attached to a complaint 'contradict the general and conclusory allegations of the pleading, the exhibits govern.' " *Gill*, 941 F.3d at 514.

To survive a motion to dismiss under Rule 12(b)(6), a pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (internal quotation marks omitted) (quoting Fed. R. Civ. P. 8(a)(2)). Labels, conclusions and formulaic recitations of the elements of a cause of action are not sufficient. *Id*. at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Furthermore, mere naked assertions are not sufficient. *Id*. A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *Id*. (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted). The Court, however, is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint. *Id*.

## III.   DISCUSSION

### <u>Policy Construction</u>

Plaintiff seeks a declaration as to the rights and obligations under a policy of commercial property insurance issued to it by Defendant. The determination as to whether there is coverage for the loss alleged by Plaintiff starts and ends with the policy of insurance. In construing the language of the policy, Defendant contends that Florida Law applies, and Plaintiff has briefed the issue in accordance with Florida law. "Florida courts have traditionally adopted the *lex loci contractus* rule to conflicts of law problems in contract cases and have, thus, looked to the law of the state where the contract was made or was to be performed." [4] *LaFarge Corp. v. Travelers Indem. Co.*, 118 F.3d 1511, 1515 (11th Cir. 1997); *Rando v. Gov't Employees Ins. Co.*, 556 F.3d 1173, 1176 (11th Cir. 2009) (stating same) (quoting *State Farm Mut. Auto. Ins. Co. v. Roach,* 945 So.2d 1160, 1163 (Fla.2006)), *certified question answered*, 39 So. 3d 244 (Fla. 2010). When the contract deals with an insurance policy, the *locus contractus* is generally the state where the insured executed the insurance application. *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1059 (11th Cir. 2007). The policy, which is provided with the amended complaint, reflects that Plaintiff is a Florida insured and the policy was issued through a producer in Florida. [Doc. 6-1 at pp. 1, 6]. "Florida applies its own laws to interpret policies which are purchased and delivered in that state." *Trans*

---

[4] "Since this is a diversity action, [the Court is] required to apply the substantive law of the forum state, namely Florida, including its conflict-of-laws rules." *Fioretti v. Massachusetts Gen. Life Ins. Co.*, 53 F.3d 1228, 1235 (11th Cir. 1995) (citation omitted).

*Caribbean Lines, Inc. v. Tracor Marine, Inc.*, 748 F.2d 568, 570 (11th Cir. 1984). The Court therefore agrees that Florida law applies.

"Generally, under Florida law, 'in construing insurance policies, courts should read each policy as a whole, endeavoring to give every provision its full meaning and operative effect.' " *Penzer v. Transportation Ins. Co.*, 545 F.3d 1303, 1306 (11th Cir. 2008) (quoting *Auto–Owners Ins. Co. v. Anderson,* 756 So.2d 29, 34 (Fla.2000)), *certified question answered*, 29 So. 3d 1000 (Fla. 2010). In doing so, the ordinary meaning is given to the plain language used in the policy. *See Hegel v. First Liberty Ins. Corp.*, 778 F.3d 1214, 1221 (11th Cir. 2015) ("Florida courts 'commonly adopt the plain meaning of words contained in legal and non-legal dictionaries.' "); *GEICO Marine Ins. Co. v. Shackleford*, 945 F.3d 1135, 1140 (11th Cir. 2019) ("Under Florida law, we first look to the text of the policy and construe the policy 'in accordance with [its] plain language.' "). "[I]f, after resort to the ordinary rules of construction, 'the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and the other limiting coverage,' " the policy is ambiguous. *Interline Brands, Inc. v. Chartis Specialty Ins. Co.*, 749 F.3d 962, 965 (11th Cir. 2014) (quoting *Taurus Holdings, Inc. v. U.S. Fidelity and Guar. Co.,* 913 So.2d 528, 532 (Fla.2005)). An ambiguity in an insurance policy must be construed in favor of the insured so as not to deny coverage *Cast Steel Prod., Inc. v. Admiral Ins. Co.*, 348 F.3d 1298, 1300 (11th Cir. 2003). However, "[c]ourts may not 'rewrite contracts, add meaning that is not present, or otherwise reach results contrary to the intentions of the parties.' " *Intervest Const. of Jax, Inc. v. Gen.*

*Fid. Ins. Co.*, 133 So. 3d 494, 497 (Fla. 2014) (quoting *State Farm Mut. Auto. Ins. Co. v. Pridgen*, 498 So. 2d 1245, 1248 (Fla. 1986)).

### The Policy

As an initial matter, Plaintiff's claim that the loss is covered because its policy is an "all-risks" policy lacks merit. The Florida Supreme Court has stated on multiple instances that "[a]lthough the term 'all-risk' is afforded a broad, comprehensive meaning, an 'all-risk' policy is not an 'all loss' policy, and thus does not extend coverage for every conceivable loss." *Fayad v. Clarendon Nat. Ins. Co.*, 899 So. 2d 1082, 1086 (Fla. 2005); *Sebo v. Am. Home Assurance Co.*, 208 So. 3d 694, 696–97 (Fla. 2016) (stating same). Rather, the loss must be one that is covered based on a reasonable construction of all the terms of the policy.

Importantly, the policy issued to Plaintiff contains the following relevant provisions and endorsements:

### CAUSES OF LOSS – SPECIAL FORM

**A.    Covered Causes Of Loss**
When Special is shown in the Declarations, Covered Causes of Loss means direct physical loss unless the loss is excluded or limited in this policy.

\* \* \*

### BUILDING AND PERSONAL PROPERTY COVERAGE FORM

. . .

**A.    Coverage**

9

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

**1. Covered Property**

Covered Property, as used in this Coverage Part, means the type of property described in this section, **A.1.**, and limited in **A.2.** Property Not Covered, if a Limit Of Insurance is shown in the Declarations for that type of property.

   **a. Building,** meaning the building or structure described in the Declarations…

   **b. Your Business Personal Property** consists of the following property located in or on the building or structure described in the Declarations or in the open (or in a vehicle) within 100 feet of the building or structure or within 100 feet of the premises described in the Declarations, whichever distance is greater…

   **c. Personal Property Of Others** that is:
   (1) In your care, custody or control; and
   (2) Located in or on the building or structure described in the Declarations or in the open (or in a vehicle) within 100 feet of the building or structure or within 100 feet of the premises described in the Declarations, whichever distance is greater….

**3. Covered Causes Of Loss**

See applicable Causes Of Loss form as shown in the Declarations. . . .

\* \* \*

**BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM**

. . .

**A.   Coverage**

10

**1. Business Income**
   Business Income means the:
   **a.** Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred; and
   **b.** Continuing normal operating expenses incurred, including payroll. . . .

   We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income Limit Of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss. . . .

**3. Covered Causes Of Loss, Exclusions And Limitations**

   See applicable Causes Of Loss form as shown in the Declarations.

**5. Additional Coverages**
   **a. Civil Authority**
   In this Additional Coverage, Civil Authority, the described premises are premises to which this Coverage Form applies, as shown in the Declarations.
   When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises . . .

**F.     Definitions**

11

**3.** "Period of restoration" means the period of time that:

  **a.** Begins:

    **(1)** 72 hours after the time of direct physical loss or damage for Business Income Coverage; or

    **(2)** Immediately after the time of direct physical loss or damage for Extra Expense Coverage;

    caused by or resulting from any Covered Cause of Loss at the described premises; and

  **b.** Ends on the earlier of:

    **(1)** The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

    **(2)** The date when business is resumed at a new permanent location.

. . .

**6.** "Suspension" means:

  **a.** The slowdown or cessation of your business activities; or

  **b.** That a part or all of the described premises is rendered untenantable, if coverage for Business Income Including "Rental Value" or "Rental Value" applies.

[Doc. 6-1 at pp. 17, 28-30, 44-45, 52].

**<u>Direct Physical Loss</u>**

The existence of coverage for Plaintiff's loss turns on whether there was "direct physical loss of or damage to Covered Property." This is the language used in the Special Form and the other forms that are relevant to Plaintiff's claim. Pursuant to the Business Income (and Extra Expense) Coverage Form, Defendant undertakes to "pay for the actual loss of Business Income [the Insured] sustain[s] due to the necessary

'suspension' of [the Insured's] 'operations' during the 'period of restoration'." *Id.* at p. 44. The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations and that loss must be caused by a direct physical loss that is not excluded or limited in the policy. *Id.* at pp. 44, 45, 17. Likewise, under the Building and Personal Property Coverage Form, Defendant undertakes to "pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss." *Id.* at p. 28. "Covered Causes of Loss means direct physical loss unless the loss is excluded or limited in this policy." *Id.* at p. 17.

While the term "direct physical loss" is frequently referenced in the insuring language, it is not defined. Hence, the Court will construe that term in accordance with the plaining meaning of the words. The jurisprudence from Florida reflects that the State's courts of appeals, applying these same principles of interpretation, have construed "direct physical loss" on a few occasions. For example, in *Homeowners Choice Prop. & Cas. v. Miguel Maspons*, 211 So. 3d 1067, 1069 (Fla. 3d DCA 2017), the Third District construed the term in a homeowner's policy of insurance and stated as follows:

> We give the undefined words of an insurance contract their ordinary meaning, just as we would with any other type of contract. *See State Farm Fire & Cas. Co. v. Castillo*, 829 So.2d 242, 244 (Fla. 3d DCA 2002) ("[T]erms utilized in an insurance policy should be given their plain and unambiguous meaning as understood by the 'man-on-the-street.' "). A "loss" is the diminution of value of something, and in this case, the 'something' is the insureds' house or personal property. Loss, *Black's Law*

13

> *Dictionary* (10th ed. 2014). "Direct" and "physical" modify loss and impose the requirement that the damage be actual. Examining the plain language of the insurance policy in this case, it is clear that the failure of the drain pipe to perform its function constituted a "direct" and "physical" loss to the property within the meaning of the policy.

*See also Vazquez v. Citizens Prop. Ins. Corp.*, No. 3D18-769, 2020 WL 1950831, at *3 (Fla. Dist. Ct. App. Mar. 18, 2020) (adopting interpretation in *Maspons*).

The Eleventh Circuit Court of Appeals has since adopted this definition, holding that "under Florida law, an item or structure that merely needs to be cleaned has not suffered a 'loss' which is both 'direct' and 'physical.' " *Mama Jo's Inc. v. Sparta Ins. Co.*, 823 F. App'x 868, 879 (11th Cir. 2020) (*citing Maspons*, 211 So. 3d at 1069). The insured restaurant in *Mama Jo's* received coverage under an "all risk" commercial property insurance policy which included, in relevant part, a Building and Personal Property Coverage Form and a Business Income (and Extra Expense) Coverage Form. *Id.* at 871. A claim was filed for cleaning the insured restaurant—due to dust and debris generated by road construction in its vicinity—and a loss of business income. *Id.* at 871-872, 879. It was denied. *Id.* at 872. The insured filed suit, and the district court granted summary judgment for the insurer, finding that neither claim was covered, and reasoning that the insured had suffered neither a "direct physical loss"— which it defined as tangible damage to property, which causes it to become unsatisfactory for future use or requires repairs—nor a necessary suspension of its operations as a result of a "direct physical loss." *Id.* at 875. The appellate court agreed

and affirmed. *Id.* at 878-880. Plaintiff has not provided any binding authority to the contrary.

This Court has since adopted that construction of the relevant term. *See Infinity Exhibits, Inc. v. Certain Underwriters at Lloyd's London Known as Syndicate PEM 4000*, No. 8:20-CV-1605-T-30AEP, 2020 WL 5791583, at *1 (M.D. Fla. Sept. 28, 2020) (finding that policy did not cover loss of income suffered by company that designs and fabricates trade show displays because the Amended Complaint failed to allege facts describing how the Property suffered any actual physical loss or damage). As such, there must be tangible damage to property for a "direct physical loss" to exist. *Id.* at 875.[5]

Based on the allegations of the Complaint, Plaintiff did not suffer any such tangible damage. Plaintiff specifically alleges that it was ordered closed in response to the Covid-19 pandemic and as a result, it lost in excess of $30,000 in net profit and $120,000 in operating expenses over a two-month period. [Doc. 6 ¶ 6]. It suffered an economic loss that did not result from tangible damage. This is not the type of loss that Defendant undertook to pay for based on the plain meaning of the language in the policy. Again, the Business Income (and Extra Expense) Coverage states that Defendant "will pay for the actual loss of Business Income [Plaintiff] sustain[s] due to the necessary 'suspension' of [its] 'operations' during the 'period of restoration' " and

---

[5] The Court further notes that this construction gives greatest meaning and effect to every word and phrase in the policy, as Defendant contends.

that " 'suspension' *must* be caused by direct physical loss of or damage to property at premises which are described in the Declarations." [Doc. 6-1 at p. 44 (*emphasis added*)]. The suspension was not caused by tangible damage. Instead, the government mandated a statewide closure of bars and restaurants due to the pandemic.[6] Plaintiff has not alleged any tangible damage whatsoever.[7] As such, the Court is compelled to find that the Complaint has not alleged a loss that falls within the scope of the policy's insuring language, warranting dismissal for failure to state a cause of action pursuant to Rule 12(b)(6), Federal Rule of Civil Procedure.[8]

---

[6] According to the Centers for Disease Control and Prevention, the virus that causes Covid-19 "spreads through respiratory **droplets or small particles, such as those in aerosols, produced when an infected person coughs, sneezes, sings, talks, or breathes**." *Frequently Asked Questions*, CENTERS FOR DISEASE CONTROL AND PREVENTION (Dec. 2, 2020), https://www.cdc.gov/coronavirus/2019-ncov/faq.html. *See* Fed. R. Evid. 201(b), (c), (d) (stating that a court may, on its own and at any stage of the proceeding, judicially notice a fact that is not subject to reasonable dispute because it is generally known within the trial court's territorial jurisdiction or can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned).

[7] Because Plaintiff has not alleged any "damage to property other than property at the described premises . . . that prohibits access to the described premises," the Court finds that the Complaint does not allege a claim for loss of business income relating to civil authority as provided for in the policy. [Doc. 6-1 at p. 45].

[8] There is no merit to Plaintiff's claim that resolution of this issue is inappropriate on a motion to dismiss and that the Court should deny the motion and defer the issue of coverage until summary judgment. As the Court explained on the record at the hearing, there is no need for further factual development and the issue is one that will be resolved as an issue of law. There is no dispute in our jurisprudence that "[q]uestions of contractual interpretation are pure questions of law." *BioHealth Med. Lab., Inc. v. Cigna Health & Life Ins. Co.*, 706 F. App'x 521, 523 (11th Cir. 2017) (citing *Gibbs v. Air Canada*, 810 F.2d 1529, 1532 (11th Cir. 1987)). In fact, the Eleventh Circuit has explicitly stated that "[b]ecause a motion to dismiss raises only questions of law, these challenges should be resolved before discovery begins." *Harvin v. Nationwide Title Clearing*, 632 F. App'x 599, 601 (11th Cir. 2016) (*citing World Holdings, LLC v. Germany,* 701 F.3d 641, 655 (11th Cir.2012)).

Moreover, it appears to the Court that any amendment would be futile based on the facts and circumstances of this case. As such, the Court will dismiss this case with prejudice. *See Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1014 (11th Cir. 2005) ("The district court, however, need not 'allow an amendment . . . where amendment would be futile.' ") (quoting *Bryant v. Dupree,* 252 F.3d 1161, 1163 (11th Cir.2001)). Accordingly, it is

**ORDERED**:

1. Defendant's Motion to Dismiss Pursuant to Rule 12(b)(6) [Doc. 13] is **GRANTED**, as there is no coverage, as a matter of law, for the claim asserted in Plaintiff's Amended Complaint.

2. The Complaint is dismissed with prejudice.

3. The Clerk of Court is directed to close this case and terminate any pending motions as moot.

**DONE AND ORDERED** in Tampa, Florida on December 17, 2020.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any